IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                               **Case No. 11-40068-01-RDR**

TERRI L. MORRIS,

        Defendant.

**MEMORANDUM AND ORDER**

Defendant is facing two counts of making a material false report to the government regarding stamp balances at her post office in August 2010. Defendant is also facing an embezzlement count which alleges that she embezzled property from her post office between October 2008 and August 2010. The case is set for trial on May 15, 2012.

This order is issued to rule upon two motions in limine, one from each side in this case. The government would like to exclude the testimony of two doctors and defendant would like to exclude testimony regarding her gaming activity at local casinos. The court has conducted a hearing upon these motions and is prepared to rule.

    I. DOCTORS' TESTIMONY

The government has filed a motion to exclude expert testimony or in the alternative a request for a <u>Daubert</u> hearing. Doc. 32.

1

This motion makes relevance and reliability challenges to the testimony of two doctors.  One is Dr. Hutchins, a general practitioner and defendant's primary care provider.  The other is Dr. Heredia, a psychiatrist who treated defendant.  The credentials of Dr. Heredia have not been provided to the government or the court and, according to defense counsel, Dr. Heredia has refused to provide them to him.

Summary of experts' proposed testimony

According to the summary of experts' proposed testimony (Doc. No. 31) filed by defense counsel, Dr. Hutchins will testify that defendant was referred by a counselor to his clinic in September 2010 for psychiatric assistance or medication, as defendant had been receiving counseling for PTSD due to an event involving a fire and the counselor felt that defendant was in need of some further help.  Dr. Hutchins will further testify that he prescribed medication and referred defendant to Dr. Heredia.  Also, Dr. Hutchins will testify as to his observations and findings during appointments with defendant as well as his opinions and the basis and reasons for those opinions.

The summary further states that Dr. Heredia will testify that he saw defendant based upon Dr. Hutchins' referral; that defendant told him about her actions during the incident with the fire; and that he diagnosed defendant with "Major Depressive Disorder recurrent and severe with psychotic features; PTSD; and Generalized

2

Anxiety Disorder; increased psychosocial difficulties secondary to problems with primary support group, longstanding psychiatric illness and increased financial issues, as well as medications prescribed." Doc. 31, p. 2.  Also, Dr. Heredia will testify about the classic symptoms of PTSD including, but not limited to, difficulty concentrating, as well as his observations and findings during appointments with defendant.

The summary also states that both doctors are expected to testify that they saw defendant because of referrals based upon symptoms of PTSD which appeared to worsen at approximately the same time as the events leading to the Indictment in this case.

Relevance

The government claims that the doctors' testimony should be excluded because it is not relevant to the issues in this case.  In response, defense counsel makes reference to U.S. v. Brown, 326 F.3d 1143, 1147 (10th Cir. 2003) where the court held that "psychological or psychiatric evidence that negates the essential element of specific intent can be admissible."  See also U.S. Dupre, 462 F.3d 131, 137 n.8 (2$^{d}$ Cir. 2006)(citing Brown and other cases for the same proposition).

The crimes charged in this case are specific intent crimes. The government must prove that defendant knew that the reports she submitted contained false statements at the time she made the reports and that she took property of the government knowing it was

3

not hers and intending the deprive the government of its use or benefit.  Tenth Circuit Pattern Jury Instructions 2.46.1, 2.31 (2005).  To act "knowingly" means to act "consciously and with awareness and comprehension and not because of ignorance, mistake or misunderstanding or other similar reason.  A person who makes, submits or uses a statement or writing which that person believes to be truthful does not 'knowingly' make, submit, or use a false, fictitious or fraudulent statement."  FEDERAL JURY PRACTICE AND INSTRUCTIONS § 40:13 (6TH ed. 2009).

Under Rule 401 of the Federal Rules of Evidence: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  It appears to the court that evidence that defendant appeared distracted, forgetful or unable to concentrate, and that defendant suffered from a mental illness characterized by such symptoms, would be relevant to an argument that the government did not prove that she acted with the specific intent required for conviction.  Therefore, the court rejects the government's argument as to relevance.

<u>Reliability</u>

The government also argues that the doctors' testimony is not reliable.  Before the court discusses the question of reliability vis-a-vis <u>Daubert</u>, the court observes that some of the proposed testimony of the two doctors is in the nature of fact witness

4

testimony as opposed to expert witness testimony. These doctors personally observed defendant and can testify reliably (it can be assumed) regarding their observations and actions as fact witnesses. No Daubert analysis is necessary as to that kind of testimony.

The court believes that it is expert testimony for the purposes of this case for a doctor to give an opinion regarding his diagnosis of defendant's mental condition as of a certain date or to speak generally regarding the symptoms of PTSD, depression, or anxiety disorder. At this point in time, the court does not have evidence that either doctor is qualified to give such testimony. It appears from the summary of experts' proposed testimony that Dr. Hutchins may not be asked to give such testimony, although this is somewhat unclear.

The court would encourage counsel for both sides to come to an agreement in advance if possible as to the scope and content of the doctors' testimony, at least for the purposes of any reliability challenge. The court notes that the Advisory Committee Notes to Rule 702 of the Federal Rules of Evidence states:

> A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule. Daubert did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in Daubert stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden

> of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595.  Likewise, this amendment [the 2000 amendment to Rule 702 in response to Daubert] is not intended to provide an excuse for an automatic challenge to the testimony of every expert.  See Kumho Tire Co. v. Carmichael, 119 S.Ct. 1167, 1176 (1999)(noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.")

It seems possible that this is a situation in which the reliability of the doctors' testimony could be taken for granted.

If no agreement can be reached as to the issue of reliability, then the defense counsel should inform the court in advance if defense counsel intends to ask either doctor to give opinion testimony regarding his diagnosis of defendant, or to comment upon the symptoms of PTSD, depression or anxiety disorder, or to discuss medical or psychiatric principles.  Upon such notification, the court will conduct a hearing outside the presence of the jury where the qualifications of the witness to give such testimony can be established or disproved pursuant to Daubert.

Of course, under Rule 704(b), an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged.

<u>References to PTSD</u>

Government counsel asked during the hearing on these motions

that the court bar any reference to PTSD until there is a ruling upon the Daubert issues.  The court declines to do so.  Whether or not defendant has PTSD may be relevant but not dispositive to the issues in this case.  The court does not view it as so critical to the issues in the case or so prejudicial that reference to the matter must be prohibited prior to expert testimony.  Furthermore, it would be understandable and permissible if either side wanted to make reference to the subject in voir dire.

Summary

In summary, the court is unconvinced at this time that the doctors' testimony will not be relevant to the issues in this case, particularly those relating to specific intent.  The court believes some of the doctors' testimony described in the summary filed by defense counsel is actually fact witness testimony which does not require Daubert analysis.  As to the testimony which does qualify as expert testimony, the court asks counsel to determine whether they can agree in advance as to the disposition of any reliability issues.  If no agreement can be reached, upon notification from defense counsel the court will determine those reliability questions outside the presence of the jury before the doctors' testify.  The court declines to bar any reference to PTSD prior to a final decision upon the Daubert issues in this case.

II.  GAMING EVIDENCE

Defendant has filed a motion to prevent the government from

7

submitting evidence that defendant gambled at local casinos from 2007 to 2011.  Doc. No. 34.  Defendant contends that defendant "lost approximately $200 a year at each of three casinos, which is not disproportionate to her income."  Id. at p. 7.

The government contends that she lost more than that and that her losses were about the same as the amount of the alleged embezzlement in this case - $6,000.  The government further claims that it is the amount defendant chose to gamble, not the amount lost, which is relevant here.  The government also asserts that defendant's gambling increased at the same time as emergency stamp orders increased at her post office.  According to the government, defendant's gambling was part of a pattern of financial malpractice and it can be considered proof that she did not suffer severely from PTSD because she was not withdrawn from social activity.

On the record currently before the court, we believe the evidence of gambling during the time defendant allegedly embezzled from the post office is admissible as Rule 404(b) evidence of "other acts" that are relevant to proving a motive for embezzlement and making false reports.  Evidence of gambling after that period of time would not be relevant to motive.  While defendant asserts that the amount of the gambling losses was affordable for defendant, this assertion is unproven and probably goes more to the weight of the evidence.  Since defendant's gambling was legal and involved moderate amounts of money, the prejudicial impact of the

evidence should be slight. Other courts have found relatively small gambling losses to be admissible evidence. See U.S. v. Blanchard, 618 F.3d 562, 569-70 (6th Cir. 2010)(involving gambling losses of $1,500 in one year and $20,000 another year, finding that questions regarding the amount of money actually gambled go the weight of the evidence, not its admissibility); U.S. v. Ellington, 2009 WL 1309525 *7 (N.D.Ill. 2009)(involving gambling losses of several hundred dollars); see also U.S. v. Mobley, 193 F.3d 492, 495-96 (7th Cir. 1999)(finding that evidence of money devoted to gambling and other extravagances was not unduly prejudicial).  If defendant requests, the court shall give a cautionary instruction regarding the evidence.

   III.  CONCLUSION

   In accordance with the above comments, defendant's motion in limine regarding gaming evidence (Doc. No. 34) is denied and the government's motion to exclude expert testimony or in the alternative request for a Daubert hearing (Doc. No. 32) is denied in part and granted in part.

   **IT IS SO ORDERED.**

   Dated this ―― day of May, 2012 at Topeka, Kansas.


                         s/Richard D. Rogers
                         United States District Judge

9